Caruthers *v.* Crockett.

7L 91
15L 417

JAMES CARUTHERS *et al. v.* M. D. CROCKETT *et al.*

1. GRANT. *Boundaries. Re-survey.* If the owners of a grant of land after it has once been located, in order to re-establish the boundaries of the grant, cause the lines to be re-surveyed and re-marked, they cannot disaffirm their act and go back to the old boundaries when found, to the prejudice of subsequent appropriators of the adjacent lands, acting on the faith of the re-survey.

2. SAME. *Same. State and grantee. Estoppel.* Whether the re-survey is in reasonable conformity with the grant, either in quantity of land or location, is a matter between the State and the grantee, and if the State be bound by the boundaries as fixed, the grantee is equally bound, the estoppel being mutual.

3. SAME. *Estoppel. Error in charge of court.* It is therefore error in the court, upon the trial of an action of ejectment between claimants under a re-marked grant, and claimants under subsequent appropriators on the faith of the re-marking, to charge that the change of lines on the re-survey, in order to be binding as an estoppel, must be "in reasonable conformity to the original location."

FROM OBION.

Appeal in error from the Circuit Court of Obion county. J. R. HAWKINS, J.

COCHRAN & ENLOE for Caruthers.

J. G. SMITH and J. A. GARDNER for Crockett.

COOPER, J., delivered the opinion of the court.

This action of ejectment was commenced on the 8th of September, 1860, and has already been twice before this court, on each of which occasions the ver-

dict and judgment below in favor of the defendants were reversed for errors in the charge of the trial judge to the jury. The third trial has again resulted in a verdict and judgment for the defendants, and the plaintiffs appealed in error.

The plaintiffs claim by a connected chain of title under two grants from the State of Tennessee to the University of North Carolina, dated November 23, 1827, and founded on entries made December 16, 1822. The defendants claim, and by a regular chain of title, under a grant of the State of North Carolina to Frederick Miller for four thousand acres, dated July 10, 1788. The defendants have the elder title. The grant calls to begin at a white oak, hickory and dogwood sapling marked H. R., on the south bank of Reelfoot river, at the mouth of Pawpaw creek, and the defendants insist that this corner is on what is now known as Blue Bank Bayou, at a point claimed as the former mouth of Pawpaw creek, and was established by the original locator and surveyor. The proof leaves little doubt that the defendants are correct in this contention. The right of the plaintiffs rests upon the assertion that after the boundaries of the grant had become obscured or lost by the effect of the earthquakes in the winter of 1811–12, and between the years 1821 and 1824, the owners of the Miller grant had, in order to re-establish the boundaries of the grant, caused the lines to be res-urveyed and re-marked, and that various parties entered lands and obtained grants of adjoining lands calling for the new corners and boundaries, whereby the defendants became estopped to insist

upon any other corners and lines than those thus established. If the four thousand acre grant be run out by beginning at the point on Blue Bank Bayou as claimed by the defendants, the land in controversy is covered by the grant. On the other hand, if the defendants be limited to the lines of their re-survey, the plaintiffs insist the land will not be covered by the grant. In this view, the rights of the parties must turn upon the law applicable to the facts.

When the case was first before this court in 1871, it was declared to be settled law, Judge Freeman delivering the opinion, that a party cannot disaffirm his own survey, made in reasonable conformity to his grant, and go to his old boundaries when found, to the prejudice of subsequent appropriators of the adjacent land; that the State was bound by the new marked lines, and, being so, the other party to the contract, the grantee, was equally bound on the principle of estoppel, which must always be mutual: *Singleton* v. *Whiteside,* 5 Yer., 18, 39. The court further held that the owners of the land would be bound by the act of their agent employed and authorized to establish the boundaries.

Upon the second trial, the court charged the general principle of the effect of the establishment of the boundaries by re-marking correctly, but added: "To make an act in *pais* estop a party, and the recognition of an illegally new line as the boundary, the act of recognition must be shown to have been done knowingly and deliberately, not hastily and unadvisedly." This court held the last clause of the charge to be erro-

neous, and reversed and remanded the case, reiterating the law as laid down in the former opinion.

Upon the third trial, the charge of the court on the point in controversy was as follows: "Notwithstanding the grant to Miller as originally located may cover the land in dispute, yet if the proprietors thereof, through their agent empowered to establish their lines, changed or re-marked the lines thereof in reasonable conformity to the original location, and when thus changed the grant did not cover the land in dispute, and the survey of the lands granted to the University was made in consequence of and in conformity to the lines thus changed, then and in that event the claimants of the Miller grant would be estopped to show that the lines thereof were different from those established by their agent in so far as the two grants may have conflicted with each other."

The plaintiffs asked the court to charge: "If the proprietors of the Miller grant, by themselves or their agent, re-marked said grant at the place contended for by the plaintiffs, before the plaintiffs' surveys were made, and the plaintiffs conformed their surveys to the line so re-marked, the defendants would be estopped to claim their land at their original boundaries to the prejudice of the plaintiffs. The distance of the re-marking from the original locality of the land does not enter into the question of reasonable conformity so far as the rights of subsequent appropriators are concerned."

The plaintiffs also requested the following charge: "That if the proprietors of the Miller grant re-marked

or established said land at the place insisted upon by the plaintiffs, and afterwards, and after the grants to the plaintiffs or those under whom they hold, went back to the original location, then the Miller grant would not be the older or superior title in reference to the University grants and statute of limitations."

Although this last request is copied into the brief of the learned counsel for the plaintiffs, no argument has been submitted in support of it.   And if it was intended to ask more than the trial judge had conceded, namely, that the plaintiffs, in the case supposed, would have the better title if the land in controversy was not covered by the new boundaries, the charge requested was clearly not the law, and was properly refused.   For the Miller grant would be the older and better title as to the land conveyed by it, even if contained in the new boundaries, and the defendants might be protected by the statute of limitations, whether the land was covered by the grant or not.

The real contest is over that part of the charge which limits the estoppel to a change of lines " in reasonable conformity to the original location."   The beginning corner of the re-survey of the Miller grant, as contended for by the plaintiffs, seems to have been some three or four miles from the beginning corner of the original location.   If now a re-survey, which will operate as an estoppel, can only be made " in reasonable conformity to the original location," there may be a very material qualification of the rule laid down by this court.   The plaintiffs, with a view to the qualification as embodied in the charge, requested the

court to charge: "That the distance of the re-marking from the original locality of the land does not enter into the question of reasonable conformity so far as the rights of subsequent appropriators are concerned."

In laying down the principle of estoppel by re-marking, when this case was first before the court, it was said "that a party cannot disaffirm his own survey, made in reasonable conformity to his grant." The latter words were borrowed from the language of Catron, J., in *Singleton* v. *Whiteside*, 5 Yer., 36, where he is discussing the reasonableness of the rule which would hold the grantee to his own survey, and sug-gests that the grantee is sure to include as many acres as the grant calls for. "So far," he says, "as my knowledge of re-marking, or rather marking of lines for granted lands, extends, I have not known, nor have I ever heard of any claimant laying off to himself too few acres. This is not stated as a reproach, but as a fact on which are based important considerations in fixing the general rule, that where the State fails to have marked the boundaries of a grant, the grantee may do it for himself, conforming reasonably to the calls, and the State is estopped to deny the correctness of the boundary thus fixed, the lines made standing on the foot of agreement between the State and the grantee. The State being bound by the agreement, of course the grantee is equally bound, estoppel being reciprocal." The meaning plainly is that if the grantee so far conforms reasonably to the calls of the grant as not to include too great a quantity of land, the State will be bound, and the grantee equally estopped.

What would be reasonable conformity in this respect seems never to have passed into judgment, and the history of the case of *Singleton* v. *Whiteside*, as it subsequently appears in *Whiteside* v. *Singleton*, Meigs, 222, shows that if the words mean anything they are susceptible of a very liberal construction. If the doctrine of reasonable conformity applies to location at all, it would doubtless be subject to the like liberal construction. And the question of reasonable conformity is a question between the State and grantee. The language of his Honor the trial judge in this case, impliedly requiring the change of lines to be "in reasonable conformity to the original location," is without any warrant in authority, nor have the learned counsel of the defendants in error undertaken to sustain it. They have simply referred to the case in 5 Yerger. As there is no controversy between the State and the claimants under the Miller grant, any allusion to reasonable conformity may well be omitted. The charge of his Honor as cited above, striking out the words "in reasonable conformity to the original location," is substantially correct. Whether the facts of the case make out an estoppel, is a question for the jury upon a proper charge.

Some objections are made to the judge's charge on the subject of the statute of limitations, not so much to what he actually said, as to the absence of qualifications with which it should have been accompanied. But the attention of the court should have been called to the qualifications, and may be on another trial.

The new trials which have been granted in this

case have been granted by this court for errors of law in the charge of the trial judge. It has been repeatedly held that the statute forbidding the granting of more than two new trials to the same party in an action at law does not apply to new trials granted for errors committed by the court. The statute was clearly intended to limit the power of the courts over the findings of the jury upon a correct charge: Code, sec. 3122; *Trott* v. *West*, 10 Yer., 500.

The judgment must be reversed, and the cause remanded for another trial.